```
                    UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT COURT OF NEW YORK
```

|  |  |
|---|---|
| MELISSA SKIDDS ) | |
|         Plaintiff, ) | |
| ) | CIVIL ACTION |
|     v. ) | NO. 13-cv-00894-WGY |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner, ) | |
| Social Security Administration, ) | |
| ) | |
|         Defendant. ) | |

WILLIAM G. YOUNG, U.S. District Judge[1]　　　　　March 22, 2016

**MEMORANDUM & ORDER**

## I. INTRODUCTION

Melissa Skidds ("Skidds") brings this action against Carolyn W. Colvin, the Acting Commissioner of the Social Security Administration (the "Commissioner" of the "Agency"), seeking reversal of the Commissioner's determination that Skidds is not entitled to disability insurance benefits pursuant to Title II of the Social Security Act ("Act") and remand for the immediate calculation of benefits.

### A. Procedural History

On March 26, 2010, Skidds filed applications for Disability Insurance Benefits and Social Security Income benefits. Social

---

[1] Of the District of Massachusetts, sitting by designation. ECF No. 16.

[1]

Security Administration R./Tr. ("Admin. R.") 123-147, ECF No. 8.[2] The Agency denied Skidds's applications on May 21, 2010, after which Skidds requested a hearing. Id. at 81-87. A hearing took place on June 1, 2011. Id. at 26. On September 1, 2011, the hearing officer issued a written decision denying her benefits. Id. at 32. Skidds filed a request for review by the Medicare Appeals Council, which was denied on May 31, 2013. Id. at 1. On July, 3, 2013, Skidds filed a complaint against the Commissioner in the United States District Court for the Northern District of New York. Compl., ECF No. 1. The Commissioner submitted her answer to the complaint on November 26, 2013. Answer, ECF 7. On May 5, 2015, the case was reassigned to this session. Reassignment Order 1, ECF No. 16.

### B. Factual Background

The Court incorporates the hearing officer's factual findings, see Admin. R. 31-37, as well as the factual history in Skidds's memorandum, see Pl.'s Mem. 1-15, to which the Commissioner does not object, see Def.'s Mem. 3 ("incorporat[ing] by reference the . . . statement of facts contained in [Skidds's memorandum] . . . except for any inferences and conclusions therein"). The parties disagree on the application of the relevant caselaw and Social Security

---

[2] The record is split across several entries, spanning from ECF No. 8 through No. 8-7.

regulations to these facts, so, where relevant, the Court discusses the factual record in more detail later in this memorandum.

**II. LEGAL STANDARDS**

The applicable standards of review for social security appeals, as well as the framework for determining who is disabled, are well known in the Second Circuit, and agreed upon by the parties, compare Pl.'s Mem. 15-16, with Def.'s Mem. 1-2, so will not be recited here. For a more in-depth discussion of them, see, for example, Walsh v. Colvin, No. 12-cv-00933, 2014 WL 1239117, at *6 (N.D.N.Y. Mar. 25, 2014).

**III. ANALYSIS**

Skidds argues that the Commissioner's determination that she is not disabled is not supported by substantial evidence in the record. Pl.'s Mem. 15-16. Specifically, Skidds argues that the Commissioner erred in (1) finding Skidds did not qualify as disabled under Listing 12.05(B), id. at 16-20; (2) finding Skidds did not meet Listing 12.04's requirements, id. at 20-23; (3) using an inadequate residual functional capacity assessment, id. at 23-24; and (4) relying on the vocational guidelines herself instead of obtaining the testimony of a vocational expert, id. at 24-25. The Court discusses these objections in turn, ultimately holding that none of them has merit.

**A.   Listing 12.05(B)**

The hearing officer found that Skidds did not satisfy the criteria for "Mental retardation" under section 12.05. Admin. R. 33. Skidds claims this finding was in error. See Pl.'s Mem. 16-20.

"Mental retardation" under Section 12.05 is a "per se disability" under the Social Security Act. Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Part A, § 12.00) (additional citations omitted). "[T]o be considered mentally retarded [i.e., intellectually disabled],[3] a petitioner must separately establish deficits in her cognitive and adaptive functioning." Id. at 148 (internal citations omitted). The "onset" of these deficits

---

[3] Although the Second Circuit in 2012 referred to "mental retardation" and having an "intellectual disability" interchangeably, see Talavera v. Astrue, 697 F.3d 145, 148 n.2 (2d Cir. 2012), Skidds notes that the Agency plans to replace the former term with the latter. See Pl.'s Mem. 16 n.18. It appears the agency already has done so. See Change in Terminology: "Mental Retardation" to "Intellectual Disability", 78 Fed. Reg. 46499-01 (August 1, 2013) (adopting a proposed rule that replaces "the term 'mental retardation' with 'intellectual disability'" in the Social Security regulations). The Supreme Court has similarly declared that it will use "intellectual disability" where it previously used "mental retardation." See Hall v. Florida, 134 S. Ct. 1986, 1990 (2014) (citing Rosa's Law, 124 Stat. 2643 (changing entries in the U.S. Code from "mental retardation" to "intellectual disability"); Schalock et al., The Renaming of Mental Retardation : Understanding the Change to the Term Intellectual Disability, 45 Intellectual & Developmental Disabilities 116 (2007); American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 33 (5th ed. 2013)).

must have occurred "before age 22." Id. at 151 (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Part A, § 12.05). Subsection 12.05(B) requires that, to prove a deficit in her cognitive functioning, Skidds must have "[a] valid verbal, performance, or full scale IQ of 59 or less[.]" 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Part A, § 12.05(B). The parties dispute how a hearing officer should proceed in light of multiple IQ tests, when some of the IQ tests produce scores of 59 or less, and others do not. Compare Pl.'s Mem. 19-20, with Def.'s Mem. 6-7. The Court is persuaded by the Commissioner's position, and holds that the hearing officer here was entitled to credit some IQ scores to the exclusion of others, at least where, as here, she has adequately explained her reasons for doing so.

Skidds received several IQ tests throughout her life. The hearing officer accorded Skidds's 2010 and 2011 IQ scores of 57 and 55, respectively, little weight because they were "inconsistent with the multiple prior results from childhood, and there is no evidence of an intervening event that would explain a drop in [Skidds's] intelligence." Id. at 33. These "multiple prior results" included testing in 1986 that produced an IQ score of 80, id. at 32, and additional testing in 1989, 1992, and 1995 that pegged Skidds at "low average" (in contrast to intellectually disabled) with regard to her cognitive abilities, id. The hearing officer also found persuasive Dr.

William Kimball's opinion that the 2011 IQ score was "an underestimate of [Skidds's] abilities[,]" id. at 33[,] as well as that of the state medical consultant, who found that Kimball's ability to complete various daily tasks was "inconsistent with an IQ score in the 50's[,]" id.

Skidds argues that the hearing officer's discounting of her more recent scores was in error. See Pl.'s Mem. 19-20. She focuses exclusively on the 2010 score, arguing that it was proclaimed valid by Dr. Jeanne Shapiro, see id., and thus, as Skidds's lowest valid IQ score, must have been accepted by the hearing officer, id. at 20 (collecting cases). The Commissioner counters that the hearing officer properly acted in a fact-finding capacity by choosing between competing tests, and also cites cases in support of her proposed rule. See Def.'s Mem. 6 (collecting cases).

The Commissioner has the better of this argument. Skidds's proposed rule -- namely that when faced with multiple IQ scores from different tests, a hearing officer must use the lowest score -- although admittedly stated by at least one published opinion, is based on a faulty inference[4] and rewards the seeking

---

[4] Skidds relies on Ray v. Chater, 934 F.Supp. 347, 350 (N.D. Cal. 1996), which reasons from the regulations' rule that when more than one IQ score is derived from one test, the lowest of those scores is used, to the general principle that the regulations favor the lowest IQ score across multiple tests. This inference is not a wise one, however, as it undermines the

of redundant tests by telling claimants: only if the score on an additional IQ test is lower than prior ones will it affect the disability analysis. A better rule is one wherein, so long as the decision is based on evidence, and explained, a hearing officer can credit one IQ score over another. See, e.g., Davis v. Astrue, No. 7:06-CV-00657, 2010 WL 2925357, at *5 (N.D.N.Y. July 21, 2010) (noting that hearing officers can properly find IQ tests invalid because they are "inconsistent with evidence in the record" so long as the officers adequately explain their reasoning) (internal citations omitted). Here, then, where the hearing officer explained her decision in crediting certain IQ scores over others, and where her decision was based on substantial evidence, there is no occasion to vacate her decision on this ground.

### B. Listing 12.04

Skidds next argues that the hearing officer erred in finding that Skidds's depression failed to satisfy Listing 12.04. See Pl.'s Mem. 20-23. Skidds and the Commissioner agree on the relevant standard: to satisfy Listing 12.04's criteria given Skidds's claimed condition, she was required to prove "either continuous or intermittent" persistence of at least four

---

hearing officer's fundamental fact-finding duty in resolving conflicts. Cf. Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (internal citation omitted).

of a list of enumerated symptoms ("Part A symptoms"),[5] as well as at least two of a separate list of enumerated symptoms ("Part B Symptoms"),[6] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(A)-(B). Compare Pl.'s Mem. 20, with Def.'s Mem. 9. Skidds claims that medical sources established four Part A symptoms. Pl.'s Mem. 21. The Commissioner appears to concede this point. See Def.'s Mem. 9 (arguing only that the hearing officer's finding with respect to Part B symptoms was supported by substantial evidence). The Court, therefore, must decide whether substantial evidence supports the hearing officer's findings with regard to Skidds's Part B symptoms.

---

[5] These symptoms, listed in subsection(A)(1), are:
    a. Anhedonia or pervasive loss of interest in almost all activities; or
    b. Appetite disturbance with change in weight; or
    c. Sleep disturbance; or
    d. Psychomotor agitation or retardation; or
    e. Decreased energy; or
    f. Feelings of guilt or worthlessness; or
    g. Difficulty concentrating or thinking; or
    h. Thoughts of suicide; or
    i. Hallucinations, delusions, or paranoid thinking.
20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(A)(1).

[6] These symptoms, listed in subsection(B)(1)-(B)(4), are:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.
20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B)(1)-(4).

The hearing officer made a factual finding with regard to each of the four Part B symptoms: Skidds has (1) "mild limitations on her activities of daily living," (2) "moderate limitations on her social functioning," (3) "mild limitations on her concentration, persistence, or pace[,]" and (4) "no episodes of decompensation[.]" Admin. R. 33.

Skidds does not argue that she has suffered any period of decompensation. With regard to the first three Part B symptoms, her claim of error is that the hearing officer ought have concluded that at least two of her impairments were "marked," as opposed to "moderate" or "mild." See Pl.'s Mem. 21-23.[7] As will be explained below, the Court holds that, even assuming Skidds suffers from a "marked" restriction in her "activities of daily life," there is substantial evidence to support the hearing officer's finding that she suffers from less-than-marked limitations in "maintaining social functioning" and "maintaining concentration, persistence, or pace." Thus, the Court cannot overturn the hearing officer's conclusion that Skidds does not qualify as per se disabled under Listing 12.04.

---

[7] "Mild" limitations are lesser than "moderate" ones, which in turn are less severe than "marked," Admin. R. 33, and "marked" is the level of severity required for Part B symptoms to qualify under Section 12.04, see 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B)(1)-(4).

With respect to the Part B symptom of "maintaining social functioning," the hearing officer found Skidds to have "moderate" limitations. Admin. R. 33. Skidds claims that she suffers from "marked" limitations, yet points only to one evaluation that so observed, see Pl.'s Mem. 21-22, neglecting to explain why the hearing officer was not entitled to credit the competing conclusions of other acceptable medical sources.[8] As such, substantial evidence supports the hearing officer's conclusion that Skidds does not suffer from "marked" limitations in "maintaining social functioning."

Skidds next points to her "impaired focus and concentration." Pl.'s Mem. 21. She highlights a notation by Dr. Shapiro, see id. (citing Admin. R. 290), and Dr. Kimball's description of "her focus and concentration as 'poor,'" id. (citing Admin. R. 385), and his finding that she was "marked[ly]" limited in understanding, remembering, and carrying out complex instructions, id. (citing Admin. R. 378). The Commissioner persuasively demonstrates that substantial evidence supports the hearing officer's finding to the contrary, however. Indeed, as the Commissioner points out, notes from Skidds's treating psychiatrist indicate that there were "no abnormalities

---

[8] The Commissioner points out that, for one, Dr. L. Blackwell found, at most, mild limitations in social functioning, Def.'s Mem. 11 (citing Admin. R. 314).

[10]

on [her] mental status examination[,]" and Dr. Shapiro ultimately found that Skidds's "attention and concentration were intact." Def.'s Mem. 11 (citing Admin. R. 336, 341-344, 346-47, 391, 394-95, 289-90).

**C. Residual Functional Capacity Analysis**

Skidds argues that the hearing officer's failure to conduct a function-by-function assessment of her residual functional capacity[9] necessitates a remand. Pl.'s Mem. 23-24. The hearing officer "accepted that [Skidds] has some non-exertional limitations[,]" Skidds argues, Pl.'s Mem. 24, thus whether those limitations are substantial must be decided on remand, id. at 25. The hearing officer, however, did make explicit findings as to Skidds's mental and physical functioning. See Admin. R. 33-34. Although these findings could have been more detailed, the Court affirms because the hearing officer's explanation of her residual functional capacity determination "provides an adequate basis for meaningful judicial review, the [hearing officer's]

---

[9] The hearing officer found that Skidds "has the residual functional capacity to perform light work[.]" Admin. R. 33. Skidds can, she found, "perform all of the basic mental demands of competitive, remunerative, unskilled work[.]" Id. The hearing officer discounted various medical sources' opinions, instead finding persuasive the "State Agency medical consultant[, who had] concluded that [Skidds] has the mental residual functional capacity to sustain competitive employment." Id. at 34. She also credited Dr. Michael Camillo's opinion (Skidds's treating psychiatrist), "to the extent" that his recommendation precludes anything but unskilled work. Id. at 35.

determination applies the correct legal standards, and because [the determination] is supported by substantial evidence[.]¹⁰" Cichocki v. Astrue, 729 F.3d 172, 173-74 (2d Cir. 2013).

**D.   Reliance on the Vocational Guidelines**

Lastly, Skidds claims error in the hearing officer's reliance on the vocational guidelines (the "Grids") instead of vocational expert testimony. See Pl.'s Mem. 24-25. "The Grids are inapplicable in cases where the claimant exhibits a significant non-exertional impairment (i.e., an impairment not related to strength)." Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013). A significant impairment "so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Id. (internal citation omitted). The hearing officer here found that Skidds did not suffer from any significant limitations. See Admin. R. 36.

Skidds claims that "her mental health impairments and her tendonitis" are significant limitations to the hearing officer's finding of "light, unskilled work." Def.'s Mem. 25. Both of Skidds's claims lack merit.

---

[10] The Commissioner points to Dr. Blackwell's opinion, relied on by the hearing officer, to support the hearing officer's findings, Def.'s Mem. 12-13, citing Admin. R. 318-320. The Commissioner is correct that "[i]t is well-settled that a consulting physician's opinion can constitute substantial evidence supporting an ALJ's conclusions." Suarez v. Colvin, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015) (Peck, M.J.) (collecting cases).

[12]

Regarding her tendonitis, the hearing officer was entitled to credit Dr. Roberto Rivera's opinion that Skidds has only "mild to moderate limitations in performing fine and gross motor activities using [her] left hand." Admin. R. 35. As to her mental health limitations, the Commissioner avers that unskilled work requires only "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Def.'s Mem. 16 (citing SSR 85-15, 1985 WL 56857 (1985)). Given the hearing officer's findings regarding Skidds's mild to moderate mental limitations, her finding that these limitations were not significant is supported by substantial evidence and will not be disturbed. Absent a finding of a significant non-exertional limitation, it was not improper for the hearing officer to rely on the Grids. See Zabala v. Astrue, 595 F.3d 402, 411 (2d Cir. 2010) (affirming a hearing officer's use of the grids where the claimant could "carry[] out simple instructions, deal[] with work changes, and respond[] to supervision").

## IV. CONCLUSION

For the aforementioned reasons, the Court AFFIRMS the Commissioner's decision and DENIES Skidds's motion, ECF No. 1.

                              /s/ William G. Young  
                              WILLIAM G. YOUNG  
                              U.S. DISTRICT JUDGE